IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STADIUM MOTORCARS, LLC *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-18-1920 |
| | § | |
| FEDERAL INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Stadium Motorcars, LLC and Central Houston Motorcars, LLC sued their insurer, Federal Insurance Company, in state court, alleging that Federal Insurance wrongfully denied coverage for an arbitration award entered against them in favor of a former employee. Stadium and Central were insured under a Federal Insurance policy covering losses from certain employment claims. Chris Singleton sued Stadium and Central for wrongful termination and breach of contract. Singleton nonsuited the litigation and then filed an arbitration claim against Stadium and Central, asserting the same causes of action. Stadium and Central gave Federal Insurance notice of the lawsuit and the nonsuit, but not of the subsequent arbitration. After Singleton prevailed in the arbitration, Stadium and Central sought payment from Federal Insurance for the award. Federal Insurance declined coverage based on Stadium and Central's failure to give timely notice of the arbitration, a condition precedent to coverage.

Federal Insurance moved for summary judgment that the arbitration award was not covered because Stadium and Central had failed to give notice of the arbitration until after the award issued and after the Policy and the Extended Reporting Period had both expired, and because the lack of

notice prejudiced Federal Insurance. (Docket Entry No. 18). Stadium and Central responded and cross-moved for summary judgment, arguing that because Federal Insurance had received notice of Singleton's lawsuit, that was sufficient; the after-the-award notice of the arbitration did not prejudice Federal Insurance; and, alternatively, Federal Insurance had no right to notice because the reservation-of-rights letter it sent during Singleton's litigation created a disqualifying conflict of interest. (Docket Entry Nos. 20, 21, 30, 31).

Based on a careful review of the pleadings; the motions, responses, and reply; the record; counsels' arguments; and the applicable law, the court grants Federal Insurance's motion for summary judgment and denies Stadium and Central's cross-motion. Final judgment is separately entered. The reasons are explained in detail below.

## I. Background

Stadium and Central own and operate car dealerships in Houston. (Docket Entry No. 18 at 5). They were insured under a claims-made Employment Practices Liability Policy, No. 8209-4299, issued by Federal Insurance, effective from January 2016, to January 2017. (*Id.* at 2, 7–8). Federal Insurance agreed to "pay, on behalf of [Stadium and Central], Loss on account of any Employment Claim first made against [Stadium and Central] during the Policy Period, or the Extended Reporting Period if applicable." (Docket Entry No. 18-1). The Policy defined "Loss" as "the amount which [Stadium and Central] become[] legally obligated to pay as a result of any [Employment] Claim." (*Id.* at 24). Stadium and Central had to give written notice of "any Claim" "as soon as practicable," and in any event before the Extended Reporting Period expired in January 2018. (*Id.* at 11; Docket Entry No. 18 Ex.1 at 8).

2

In February 2016, Central hired Singleton to manage its collision center. (Docket Entry No. 18 at 2). Singleton alleged that he discovered that Stadium and Central were fraudulently billing auto insurers and reported that to his supervisor. (*Id.*). Singleton contended that he was fired in retaliation. In June 2016, Singleton sued Stadium and Central in Texas state court for breach of contract and wrongful termination. (*Id.* at 4; Docket Entry No. 20 at 1).

Stadium and Central notified Federal Insurance of Singleton's lawsuit in August 2016. (Docket Entry No. 18 at 6; Docket Entry No. 20 at 1). Federal Insurance responded that the lawsuit appeared to present a covered claim and exercised its Policy right to provide counsel to defend Stadium and Central. (Docket Entry No. 18 at 6–8).

In November 2016, Federal Insurance issued a reservation-of-rights letter confirming that Singleton's lawsuit was a covered claim timely reported. (*Id.* at 8). Federal Insurance honored Stadium and Central's decision to choose their own defense counsel and defend "at least through a ruling on the dispositive motion—subject to Federal [Insurance's] reservation of rights." (*Id.* at 9). Federal Insurance reserved the right to decline coverage based on the Policy and stated that Stadium and Central's obligations, including to communicate and cooperate, remained in effect. (*Id.*).

In March 2017, Singleton voluntarily dismissed his complaint. Stadium and Central informed Federal Insurance of the nonsuit. Federal Insurance administratively closed the claim as "no loss," agreeing to reopen it if Singleton filed another claim. (*Id.* at 10).

In April 2017, Singleton filed an arbitration claim against Stadium and Central, asserting the same causes of action he raised in the state-court litigation. Stadium and Central did not inform Federal Insurance of the arbitration. In February 2018, the arbitrator ruled in favor of Singleton,

3

awarding him $334,992 in damages. (*Id.*). In March 2018, after the award issued, Stadium and Central notified Federal Insurance and demanded payment. (*Id.* at 10–11).

Federal Insurance declined coverage based on the failure to give timely notice of the arbitration. (Docket Entry No. 18 at 11). This lawsuit, and the cross-motions for summary judgment, followed. (Docket Entry Nos. 1, 18, 19, 20, 21). The parties dispute whether Stadium and Central satisfied the Policy's condition precedent for timely notice; whether Federal Insurance was prejudiced because notice of the arbitration was not given until after the arbitrator issued the award; and whether Federal Insurance's reservation-of-rights letter waived its right to receive notice and to defend the arbitration.

## II. The Legal Standard

"Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (quotation omitted); FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Savant v. APM Terminals*, 776 F.3d 285, 288 (5th Cir. 2014)). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th

4

Cir. 2018) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). A fact is material if "its resolution could affect the outcome of the action." *Aly v. City of Lake Jackson*, 605 F. App'x 260, 262 (5th Cir. 2015) (citing *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010); *see Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) ("Needless to say, unsubstantiated assertions are not competent summary judgment evidence."). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 317 (5th Cir. 2016) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The court draws all reasonable inferences in the light most favorable to the nonmoving party. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007).

**III.	Analysis**

    **A.	Notice**

Federal Insurance argues that the arbitration award is not covered because Stadium and Central failed to report the arbitration to Federal Insurance "as soon as practicable," or even within the Policy's Extended Reporting Period. (*Id.*). Stadium and Central argue that their August 2016 notice of Singleton's lawsuit was enough because the lawsuit and the subsequent arbitration were "Related Claims" and therefore "deemed a single Claim." (Docket Entry No. 30; Docket Entry No. 18, Ex.1 at 10, 11). The parties' dispute is one of Policy interpretation, which is a question of law.

Texas law governs. *Volvo Fin. Servs. v. Williamson*, 910 F.3d 208, 211 (5th Cir. 2018) (citing *Huss v. Gayden*, 571 F.3d 442, 449–50 (5th Cir.2009)); TEX. INS. CODE Art. 21.42. Texas courts interpret "insurance policies 'using ordinary rules of contract interpretation.'" *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257–58 (Tex. 2017) (quoting *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009)). The primary concern is "to give effect to the intentions of the parties as expressed in the instrument." *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980); *Pennzoil-Quaker State Co. v. Am. Int'l Specialty Lines Ins. Co.*, 653 F. Supp. 2d 690, 697 (S.D. Tex. 2009). The court determines the parties' intent by "examin[ing] the entire agreement and seek[ing] to harmonize and give effect to all provisions so that none will be meaningless." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). Courts avoid isolating one clause from its surroundings or considering a contract clause, phrase, sentence, or section apart from other provisions. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 346 (5th Cir. 2008).

6

A court must first decide whether a policy is ambiguous. *Res. Tr. Corp. v. Cramer*, 5 F.3d 1102, 1106 (5th Cir. 1993). If "only one party's interpretation of the insurance policy is reasonable, then the policy is unambiguous and the reasonable interpretation should be adopted." *Nassar*, 508 S.W.3d at 257 (quoting *RSUI Idem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015)). The policy is ambiguous if both parties offered reasonable interpretations. *Id.* "Generally, a party seeking to establish an ambiguity in a written contract must plead the ambiguity by setting out the portions of the contract alleged to be ambiguous and by pleading the meaning or construction urged." *Starr Indem. & Liab. Co. v. SGS Petroleum Serv. Corp.*, No. H-11-2461, 2012 WL 12877817, at *5 (S.D. Tex. July 24, 2012), *aff'd*, 719 F.3d 700 (5th Cir. 2013) (citation omitted). If a policy is ambiguous, the court "must resolve the uncertainty by adopting the construction that most favors the insured." *Nassar*, 508 S.W.3d at 257 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).

Under Texas law, "[c]ompliance with the notice of suit provision is a 'condition precedent to the issuer's liability on the policy.'" *Nautilus Ins. Co. v. Miranda-Mondragon*, 711 F. App'x 214, 216 (5th Cir. 2017) (quoting *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173–74 (Tex. 1995)). The parties agree that the Policy is a "claims-made-and-reported" policy, requiring Stadium and Central to give notice of a claim "as soon as practicable." The notice triggers coverage. *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1175 (5th Cir. 2013).

The Policy included a General Terms and Conditions Part and an Employment Practices Liability Coverage Part. (Docket Entry No. 18, Ex.1). The General Terms and Conditions Part stated that "Claim" had the meaning "provided in each applicable Coverage Part." The General Terms and Conditions Part defined "Related Claims" as:

7

Claims for Wrongful Acts based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

(*Id*. at 10). Section IV of the General Terms and Conditions Part separately addressed "Related Claims," stating:

With respect to the Liability Coverage Parts,

(A) All Related Claims shall be deemed *a single Claim* made in the Policy Year in which the earliest of such Related Claims was first made or first deemed to have been made in accordance with the Reporting section of the applicable Liability Coverage Part (the "Earliest Related Claim");

(B) All Related Claims shall be subject to the same Retention and Limits of Liability applicable to the Earliest Related Claim.

(*Id*. at 11) (emphasis added).

The Employment Practices Liability Coverage Part defined "Claim" as "any Employment Claim and any Third Party Claim." (*Id.* at 21). "Employment Claim" included any "civil proceeding commenced by the service of a complaint or similar pleading" and any "arbitration proceeding pursuant to an employment contract." (*Id*. at 22).

The Employment Practices Liability Coverage Part also addressed the insured's reporting-and-notice requirements. The Reporting section states:

IV. Reporting

(A) [Stadium and Central] shall, as a condition to precedent to exercising any right to coverage give to [Federal Insurance] written notice of *any Claim* as soon as practicable[,] . . . but in no event later than

(1) if this Coverage Part expires (or is otherwise terminated) without being renewed with the [Federal Insurance], ninety (90) days after the effective date of such expiration or termination; or

(2) the expiration date of the Extended Reporting Period if applicable.

8

(*Id*. at 29) (emphasis added).

Federal Insurance concedes that Singleton's lawsuit and arbitration are "Related Claims," because they are "based upon, arising from, or in consequence of the same or related facts." (Docket Entry No. 18 at 17; Docket Entry No. 18-1 at 10; Docket Entry No. 25 at 7–9). Federal Insurance acknowledges that under the Liability Coverage Part, all "Related Claims shall be deemed a single Claim." (Docket Entry No. 18 at 11; Docket Entry No. 25 at 8–9).

Stadium and Central argue that the provision that "[a]ll Related Claims shall be deemed a single Claim" also controlled the meaning of "any Claim" in the Reporting section. According to Stadium and Central, they needed to provide Federal Insurance only one notice for all "Related Claims," which would serve as notice for subsequently filed Related Claims as well. As a result, Stadium and Central contend, notice of Singleton's lawsuit was notice of the later arbitration asserting the same claims, even though Singleton voluntarily dismissed his lawsuit before the arbitration was filed. Federal Insurance responded that the Policy's reporting requirement meant that Stadium and Central had to provide notice for "any Claim," even if it was also a "Related Claim." According to Federal Insurance, Stadium and Central had to provide separate notices of the lawsuit and the later arbitration proceeding, as soon as practicable, and in no event after January 2018, the end of the Extended Reporting Period. (Docket Entry No. 25 at 9).

The court finds that Federal Insurance's interpretation is the reasonable one consistent with the parties' intent as expressed in the Policy. The Policy defined "Claim," "Related Claims," and "single Claim" separately. They are not interchangeable terms. *Gilbert Tex. Const., L.P.*, 327 S.W.3d at 126 (a court determines the parties' intent by "seek[ing] to harmonize and give effect to all provisions so that none will be meaningless"). The General Terms and Conditions Part

9

separately set out the Related Claims section from the Definitions section, showing that the parties did not intend the provision that "Related Claims are deemed a single Claim" to apply across the board. To the contrary, the Employment Practices Liability Coverage Part separately defined "Claim" and "Employment Claim," stating that a "civil proceeding commenced by the service of a complaint" and an "arbitration proceeding pursuant to an employment contract, policy, or practice" were each a "Claim." (Docket Entry No. 18, Ex.1, at 21–22). The Reporting section requirement for Stadium and Central to give Federal Insurance written notice of "any Claim" as soon as practicable does not limit notice to the first of all subsequent "Related Claims."

Subsection (A) of the Related Claims section explained how to determine when a "single Claim" was made if it is one consisting of several "Related Claims." Subsection (B) explained the purpose of this provision. (Docket Entry No. 18 Ex.1 at 11). According to subsection (B), "Related Claims" are treated as a "single Claim" to determine Retention and Limits of Liability, which are separate from the Policy's reporting requirements. While the Retention section consistently used the term "single Claim," the Reporting section does not mention "Related Claims" or "single Claim." (*Id*. at 29, 30). Nothing shows that the Related Claims section applied to relieve or reduce the insured's obligation to give timely notice of "any Claim."

Stadium and Central interpret the Policy to mean that they did not have to give Federal Insurance a separate notice of the arbitration proceeding. This reading of the reporting requirement is not a reasonable interpretation. First, it fails to account for the Policy language and the difference between the Reporting section and the Retention and Limits of Liability section. Second, it ignores the fact that Stadium and Central notified Federal Insurance that Singleton dropped his lawsuit. Federal Insurance submitted evidence showing that it closed the claim when it learned of the

10

nonsuit, asking Stadium and Central for an update if Singleton filed any additional actions so that it could reopen the case and exercise its Policy rights over the defense. (Docket Entry No. 31 at 9). Stadium and Central gave Federal Insurance notice of the arbitration only after the arbitrator issued the award against them. Federal Insurance lost the right to defend or try to settle Singleton's claims for lack of timely notice. (Docket Entry No. 18 Ex.1 at 30). *See Prodigy Commerce Corp. v. Agric. Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 380 (Tex. 2009) (the primary purpose of the notice requirement in a "claim-made-and-reported" policy serves to "maximize the insurer's opportunity to investigate, set reserves, and control or participate in negotiation with the third party asserting [a] claim against the insured").

Requiring Stadium and Central to provide separate notices of the litigation and the subsequent arbitration is supported by *East Texas Medical Center Regional Healthcare System v. Lexington Insurance Co.*, 575 F.3d 520, 526–27 (5th Cir. 2009). Lexington denied East Texas Medical Center's coverage claim for a malpractice suit under a claims-made policy. *Id*. at 523. The policy required East Texas Medical Center to give Lexington written notice of "the claim or a suit" as soon as practicable. *Id*. at 526. Although East Texas Medical Center gave Lexington notice of the underlying malpractice claim when it was first made, the Medical Center did not give Lexington notice when a patient filed a complaint based on the same claim. *Id*. East Texas Medical Center argued that the disjunctive construction of the phrase "notice of the claim *or* suit" indicated that only one or the other was required for a given medical incident. Because East Texas Medical Center had given Lexington notice of the "claim," it contended that it did not have to give another notice of the actual lawsuit. *Id*. at 527. East Texas Medical Center also argued that the policy defined "claim" to include a "suit," which included a "civil action for damages."

11

The Fifth Circuit rejected East Texas Medical Center's interpretation as unreasonable:

> If the insured had an option of which of the two events to report for any given medical incident, it would mean, as here, that the Medical Center was not required to report a suit subsequent to a claim so long as it had reported the claim. But it would also mean that an insured would have no duty to report a claim, so long as it planned to report the eventual filing of a suit, perhaps months later. . . . It is not clear how the view would interact, under the Medical Center's theory, with *the vital importance of reporting claims* under a claims-made policy. We find the policy required separate notice of claim and of suit.

*Id.* at 527 (emphasis added). Requiring the insured to separately report a claim and a lawsuit based on the claim was "by no means an unprecedented or inexplicable requirement in an insurance contract" under Texas law. *Id.* (citing *Members Mut. Ins. Co. v. Cutaia*, 476 S.W. 2d 278, 279–80 (Tex. 1972)). The insurer had a "vital" right to receive notice of a pending claim or litigation. Timely notice of a presuit claim was not timely notice of the subsequently filed lawsuit, even if the policy required the insured to provide notice of a "claim or lawsuit." *Id.*

In this case, the court rejects as unreasonable Stadium and Central's Policy interpretation that would deny Federal Insurance notice of both the lawsuit and then, after it was dropped, the arbitration. Although the Policy language is different from that in *East Texas Medical Center*, 575 F.3d at 520, the notice-requirement interpretation is consistent with the purposes and protections of claims-made policies.

In sum, the Policy is not ambiguous. Stadium and Central had to give Federal Insurance timely notice of the arbitration, and their notice of the subsequently abandoned litigation was not enough.

### B. Timeliness

The Policy required Stadium and Central to give Federal Insurance notice of the claim—Singleton's initiation of the arbitration—"as soon as practicable," and in any event no later

12

than the deadline for the Extended Reporting Period or 90 days after the Policy expired. (Docket Entry No. 18 at 11). The Policy expired on January 19, 2017, and the Extended Reporting Period expired on January 19, 2018, but Stadium and Central did not notify Federal Insurance of the arbitration until March 2018. Stadium and Central failed to notify Federal Insurance of the arbitration proceeding "as soon as practicable" or before the Extended Reporting Period expired.

Because Stadium and Central did not notify Federal Insurance of the arbitration proceeding within the Extended Reporting Period, Federal Insurance was entitled to decline coverage even without a showing of prejudice. (Docket Entry No. 18, Ex.1 at 8); *see Pennzoil-Quaker State Co.*, 653 F. Supp. 2d at 698 (an insurer in a claims-made policy need not show prejudice before declining coverage because the insured did not provide notice before the extended reporting period expired); *cf. Prodigy*, 288 S.W.3d at 382–83 ("In a claims-made policy, when an insured notifies its insurer of a claim *within the policy term or other reporting period* that the policy specifies, the insured's failure to provide notice 'as soon as practicable' will not defeat coverage in the absence of prejudice to the insurer." (emphasis added)). This argument is consistent with the claims-made policies' purpose. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Willis*, 296 F.3d 336, 343 (5th Cir. 2002) ("The purpose of claims-made policies, unlike occurrence policies, is to provide exact notice periods that limit liability to a fixed period of time 'after which an insurer knows it is no longer liable under the policy, and for this reason such reporting requirements are strictly construed.'" (quotation omitted)); *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1330 (5th Cir. 1994) (same).

C.    **Prejudice**

Even if Federal Insurance must show prejudice, that requirement has been met. An insurer can show prejudice if it can show that one of the recognized purposes of a claims-made policy has

13

ben impaired. *C.L. Thomas, Inc. v. Lexington Ins. Co.*, No.13-13-0566-CV, 2014 WL 449516, at *5 (Tex. App.—Corpus Christi Sept. 11, 2014, no pet.) (citing 13 COUCH ON INSURANCE § 186:14 (3d ed. 2005)). An insurer is prejudiced as a matter of law:

> (1) when the insurer, without notice or actual knowledge of suit, receives notice after entry of default judgment against the insured; (2) when the insurer receives notice of the suit and the trial date is fast approaching, thereby depriving it of an opportunity to investigate the claims or mount an adequate defense; (3) when the insurer receives notice of a lawsuit after the case has proceeded to trial and judgment has been entered against the insured; and (4) when the insurer receives notice of a default judgment against its insured after the judgment has become final and nonappealable.

*St. Paul Guardian Ins. Co. v. Centrum G.S. Ltd.*, 383 F. Supp. 2d 891, 903 (N.D. Tex. 2003) (collecting case law); *see also Berkley Reg'l Ins. Co. v. Phila. Indem. Ins. Co.*, 690 F.3d 342, 350 (5th Cir. 2012) ("[O]nce the case is 'over,' notice is clearly too late.").

The arbitration award against Stadium and Central is final and nonappealable. Stadium and Central's late notice deprived Federal Insurance of the opportunity to participate in the arbitration, defend, or try to settle. There is no factual dispute material to finding that the delayed notice prejudiced Federal Insurance as a matter of law. *Berkley*, 690 F.3d at 350. Federal Insurance was entitled to deny coverage, unless, as Stadium and Central contend, its right to defend or to receive notice of the arbitration was waived due to a disqualifying conflict. It was not.

**D.      Waiver**

Stadium and Central cross-moved for summary judgment that Federal Insurance had waived its right to claim, or was "estopped from" claiming, that it had the "right to choose counsel or receive express notice of the Arbitration case." (Docket Entry No. 12-1, at 3). Stadium and Central argue that because Federal Insurance reserved the right to decline coverage during the litigation,

before the nonsuit, they were not obligated to give notice of the arbitration that followed. (Docket Entry No. 21, at 6). This argument lacks merit.

When a policy authorizes the insurer to defend claims against the insured, "[t]he right to conduct the defense includes the authority to select the attorney who will defend the claim and to make other decisions that would normally be vested in the insured as the named party in the case." *N. Cty. Mut. Ins. Co. v. Davalos*, 140 S.W. 3d 685, 688 (Tex. 2004) (citing *State Farm Mut. Auto. Ins. Co. v. Traver*, 980 S.W.2d 625, 627 (Tex. 1998)); *Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 392 (5th Cir. 2014). An insurer loses its right to conduct the defense if there is a "disqualifying conflict." *Graper*, 756 F.3d at 392.

A disqualifying conflict exists if an insurer reserves the right to decline coverage "based on the same facts to be adjudicated in the liability lawsuit." *Davalos*, 140 S.W. 3d at 689 (citing 1 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTE § 4.20 at 369–71 (4th ed. 2001)); *see also Downhole Navigator LLC v. Nautilus Ins. Co.*, 686 F.3d 325, 328–29 (5th Cir. 2012); *Unauthorized Practice of Law Comm. v. Am. Home Assurance Co.*, 261 S.W.3d 24, 40 (Tex. 2008). But if an insurer does not intend to pursue a coverage dispute, it can send the insured a prophylactic reservation-of-rights letter accepting the claim without waiving its right to decline coverage later based on newly discovered facts. *Unauthorized Practice of Law Comm.*, 261 S.W.3d at 40 (a reservation-of-rights letter does not create a disqualifying conflict if it "only recognizes the possibility that such a conflict may arise in the future"); *see also Partain v. Mid-Continent Specialty Ins. Servs. Inc.*, 838 F. Supp. 2d 547, 566–67 (S.D. Tex. 2012) (a disqualifying conflict of interest does not exist unless it is "apparent that facts upon which coverage depends will be ruled upon judicially," and a potential conflict does not operate to waive the insurer's right to defend).

Federal Insurance confirmed to Stadium and Central that the Policy required it to provide a defense of Singleton's lawsuit. (Docket Entry No. 18 at 6). Federal Insurance's reservation-of-rights letter stated that:

> We recognize that the allegations in the Complaint are unsubstantiated contentions at this time. Nothing in this letter is intended to suggest or imply that these allegations have any legal or factual merit. While we remain committed to working closely with you in the defense of this matter, we must reserve our rights to decline coverage should any of the exclusions set forth in the Policy . . . prove to be applicable. Thus, over coverage position is subject to further evaluation, and we reserve the right to assert additional terms and provisions under the Policy and at law.

(Docket Entry No. 18-11 at 8). This letter did not identify a specific coverage dispute based on the same facts to be adjudicated in Singleton's state-court lawsuit or otherwise create a disqualifying conflict that would waive Federal Insurance's Policy rights. *See Unauthorized Practice of Law Comm.*, 261 S.W.3d at 40; *Partain*, 838 F. Supp. 2d at 568–72.

Stadium and Central argue that the reservation-of-rights letter stated that coverage did not extend to mental-anguish damages, creating a disqualifying conflict. (Docket Entry No. 21, at 6). The letter stated that:

> Singleton may seek damages for emotional pain and suffering. As such, please consider Section III (D) of the EPL Coverage Part which provides that [Federal Insurance] shall not provide coverage for loss on account of any Claim . . . for . . . Mental anguish, humiliation, emotional distress, sickness, . . . provided that this Exclusion (D) shall not apply to Loss for any mental anguish, humiliation[,] or emotional distress *when alleged as part of an otherwise covered Claim*[.]

(Docket Entry No. 18-11 at 6) (emphasis added). Section III(D) stated that Federal Insurance would not be liable for mental-anguish damages unless they were sought as part of a claim covered by the Policy. *Id*. Singleton sought "past and future mental anguish" as part of his wrongful termination and his breach-of-contract claims, which Federal Insurance did not dispute were covered by the Policy. (Docket Entry No. 18-11, at 6; Docket Entry No. 21-4, at 6). Federal Insurance's letter did

16

not reserve the right to decline Singleton's claim or create a disqualifying conflict of interest. *See Unauthorized Practice of Law Comm.*, 261 S.W.3d at 40; (Docket Entry No. 18-11, at 8).

Stadium and Central also argue that the reservation-of-rights letter declined coverage for claims "arising from or in consequence of any breach of any written employment contract." (Docket Entry No. 18-11, at 6). The letter stated that this exclusion rule would not apply if Stadium and Central would have been liable for the same loss without a written employment contract. (Docket Entry No. 18, Ex. 11, at 6). Because Singleton sought the same relief under his breach-of-contract and his wrongful-termination claims, Stadium and Central would have been liable for the loss even without the employment contract. The exclusion rule did not apply.

There is no factual dispute material to finding that Federal Insurance's reservation-of-rights letter did not create a disqualifying conflict that would have waived its rights to defend. Federal Insurance had the right to decline Stadium and Central's coverage claim.

## VI. Conclusion

Federal Insurance's motion for summary judgment is granted, (Docket Entry No. 17), and Stadium and Central's cross-motion is denied, (Docket Entry No. 21). Final judgment is separately entered.

SIGNED on May 15, 2019, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge